CASE 95.—ACTION BY THE COMMONWEALTH OF KEN-
TUCKY AGAINST THE CITY OF LOUISVILLE, IN-
VOLVING THE LIABILITY OF THE CITY WHARF
PROPERTY TO TAXATION FOR STATE AND
COUNTY PURPOSES.—May 18, 1909.

133    845
f136    233

# Commonwealth v.  City of Louisville

Appeal from Jefferson Circuit Court (Chancery
Branch, Second Division).

SAMUEL B. KIRBY, Judge.

Judgment for defendant, plaintiff appeals.—Af·
firmed.

Taxation—Property Used for "Public Purposes"—Exemptions.—
Where the rents received by a city for its wharf purposes
leased to various persons for operation of such business es-
tablishments as receive materials and ship manufactured
products by boat are turned into the sinking fund for pay-
ment of interest and principal of the bonded indebtedness,
after policing, lighting, and repairing the property, the prop-
erty is used for public purposes within Const. Sec. 170, ex-
empting such property from taxation.

JUNIUS C. KLIEN, JAS. BREATHETT, Attorney General, T.
B. BLAKEY, Assistant Attorney General, for Commonwealth.

CLAYTON B. BLAKEY and ELMER C. UNDERWOOD for ap-
pellee.

No briefs.  Record out of office.

OPINION OF THE COURT BY JUDGE BARKER.—Affirm·
ing.

This action involves the question whether the wharf
property of the city of Louisville, Ky., is subject to
taxation for state and county purposes. The wharf
property is a strip of land, of varying width, in the
city of Louisville, bordering on the Ohio river. It is
owned in its entirety by the municipality, and a part

of it is paved and used for wharf purposes. A large part of it, however, has not been paved, and is not used as a public highway or for the landing of boats and shipping of goods and passengers by river transportation. This latter part of the property is leased out to various persons, who do business on the banks of the river. On it are sawmills, coalyards, and such other business establishments as receive the raw material and ship the manufactured product by river. On that part of the property which is paved and at which boats land, a toll is charged for each boat landing at the wharf. All of the proceeds or income derived from the property is used for the purpose (1) of policing, lighting, and keeping in repair the wharf property; and, (2) after this is done, the net proceeds are paid into the sinking fund of the city of Louisville for the purpose of paying the interest and finally extinguishing the principal of the bonded indebtedness of the municipality.

By section 170 of the present Constitution there is exempted from taxation, among other things, "public property used for public purposes." That this property is public property is not questioned; in fact, it has been so held repeatedly by this court. In the case of the City of Louisville v. Bank of the United States, 3 B. Mon. 138, Judge Robertson, speaking for the court, said: "As already suggested, we are satisfied that in the original location and plan of Louisville the strip between Water street and the river was intended to be always kept open for public convenience; and there is no doubt that the occlusion or even appropriation of it as private property would operate injuriously to the general public, and perhaps ruinously to the local interests of the city itself. It

ought never to have been sold. We cannot believe that the Legislature of Virginia ever intended that it should be sold as absolute private property. Having been once dedicated to public use, the trustees, without legislative authority, would never have had the power to sell the absolute title to any portion of it— and, had it not been sold prior to the adoption of our Constitution, the property owners of Louisville would have been protected in their enjoyment of its easements even against legislative power, without making adequate compensation to them in money. It would be almost as reasonable to sell and appropriate, as private property, the river itself, as the ground lining its margin, the occlusion of which would obstruct communication between the city and the river. The object of locating the town on the river was to enjoy the benefit of its facilities as a highway. To insure that enjoyment against the conflict of private right, which had been too long recognized to be successfully resisted, was doubtless the chief, and perhaps the sole, motive for the purchase of the claim of Rowan and others by the trustees. Those purchases having been made by the organs of the local public, and for its use and benefit, they operated ipso facto as a redevolution of the entire slip to the city, and a rededication of it to the public use, or rather, perhaps, as a removal of the incumbrance which jeoparded the perfect enjoyment of it as public property." To the same effect are Roberts v. City of Louisville, 92 Ky. 95, 17 S. W. 216, 13 R. 406, 13 L. R. 844, and Batman v. City of Covington, 90 Ky. 390, 14 S. W. 361, 12 R. 384.

The only question remaining is whether or not the property is used for public purposes. It is insisted

by appellant that at least a part of the property is not
used for public purposes. It is not disputed, how-
ever, that all the income derived from it is paid over
to the city for the extinguishment of the bonded
municipal debt. Every dollar received from the net
proceeds of the wharf property saves the citizens
from being taxed to raise that dollar. Therefore the
proceeds of the wharf property take the place of tax-
ation. The bonded indebtedness of the city of Louis-
ville was created for the establishment of waterworks,
the purchase and maintenance of public parks, the
building of a general sewage system, the making of
streets, and for such other municipal purposes.
Money raised by taxation for these purposes and
placed in bank would not be taxable, even though the
bank paid interest on the deposit. It is difficult to
perceive any distinction between money invested in
property which produces an income and money loaned
out at interest to produce an income. If money raised
by taxation and loaned out to produce an income is
property used for public purposes, certainly that
same money invested in property which produces an
income is used for public purposes; that is, of course,
assuming that the income is expended for the benefit
of all the citizens of the municipality. Under the
third Constitution of Kentucky, no property was ex-
empt from taxation except by statute. In the case of
City of Louisville v. Commonwealth, 1 Duv. 295, 85
Am. Dec. 624 this court held that municipal property
was divided into two classes: (1) That which was
used in carrying on the municipal government proper;
and (2) that which belonged to the city in its private
or commercial capacity. The first, which consisted of
jails, courthouses, and such like, was held to be prop-

Commonwealth v. City of Louisville.

erty used for governmental purposes, and this was exempt from taxation without the aid of any statutory enactment for that purpose; whereas all other property owned by the city, unless especially exempted by statute, was taxable.

When the present Constitution was enacted, the convention, having in mind what had been decided as to the exemption of property of cities, and determining not to leave it to the Legislature to exempt property from taxation, enacted section 170, by which all public property used for public purposes is exempt from taxation of any sort. One of the first questions which arose after the adoption of the present Constitution was the meaning of the language used in the section, "public property used for public purposes." It was at first held that this language was synonymous with public property used for governmental purposes. In the case of Commonwealth v. City of Louisville (Ky.) 47 S. W. 865, 20 R. 893, this construction was given to the language under discussion in regard to the very property involved in the case before us; and it was there held upon the authority of the case of City of Covington v. Commonwealth (Ky.) 39 S. W. 836, 19 R. 105, that the wharf property was owned by the city in its private and commercial, and not in its governmental, capacity, and therefore was subject to taxation for state purposes. But in the case of City of Frankfort v. Commonwealth (Ky.) 94 S. W. 648, 29 R. 699, we had occasion to review the whole subject of constitutional exemption from taxation of municipal property, and a rule of construction was promulgated in regard thereto to which we have adhered ever since. In that case it appeared that the city of Frankfort owned $40,000 of interest-bearing bonds, the in-

terest of which was used for the purpose of lighting
the public streets, and it was sought by the state to
tax these bonds for state purposes. In the opinion
all of the former cases on the subject were reviewed,
and it was held that the bonds were exempt, that the
lighting of the public streets was a public use, and
that the municipality had a right to invest the pro-
ceeds of taxation in bonds and use the income arising
therefrom for municipal purposes without paying
taxes to the commonwealth. In this case all of the
former decisions of the court, which were inconsist-
ent with the opinion, were overruled in the follow-
ing language: "It follows that the case of City of
Covington v. Commonwealth, 107 Ky. 680, 39 S. W.
836, 19 R. 105, and the subsequent cases which have
followed the rule therein announced, are overruled."
Following and approving the last opinion, we held in
the cases of Commonwealth v. City of Covington
(Ky.) 107 S. W. 231, 14 L. R. A. (N. S.) 1214, City
of Covington v. District of Highlands (Ky.) 110 S.
W. 338, and Thomas Ryan, etc., v. City of Louisville,
etc. (opinion delivered May 6, 1909), 118 S. W. 992,
that, where municipalities owned their waterworks in
their entirety, the property was exempt from taxation,
although they sold water to the citizens; it being held
that this was public property used for public pur-
poses. In the case of the City of Owensboro v. Com-
monwealth, 105 Ky. 344, 49 S. W. 320, 44 L. R. A. 202,
we held that a park owned by the city of Owensboro
was exempt as being public property used for public
purposes. In the case of Commonwealth v. Newport
& Covington Bridge Co. (Ky.) 105 S. W. 378, it was
held that a bridge connecting Covington and New-
port, of which the municipalities owned all the stock,

was public property used for public purposes, although a toll was charged every traveler using the bridge; the net proceeds of the bridge tolls being paid over to the respective cities and used for public purposes. In the case of Commonwealth v. City of Paducah, 126 Ky. 77, 102 S. W. 882, 31 R. 528, there was involved the question as to whether or not the electric light plant, poles and wires, a house and lot on Kentucky avenue between Third and Fourth streets, and certain personal property belonging to the city of Paducah, were or not liable to taxation for state and county purposes for the years involved in the litigation; and it was held that this property was public property used for public purposes, and therefore exempt under section 170 of the Constitution. In the opinion it was said: "It is not disputed that the property in question belongs to the city of Paducah, or that it is used for public purposes; but the state contends that it is owned and used by the city in its local municipal capacity as contradistinguished from its governmental capacity. The question presented was involved in Board of Council of City of Frankfort v. Commonwealth (Ky.) 94 S. W. 648, 29 R. 699, and is controlled by that opinion. It is not necessary to reproduce the reasoning of the opinion. In it are reviewed all of the cases from this court bearing on the subject in hand, and the conclusion reached upholds the judgment of the circuit court." We do not think it possible to distinguish the principle involved in the case at bar and that in the cases above cited; and especially is this true of the toll bridge property involved in the case of Commonwealth v. Newport & Covington Bridge Co., supra. The toll bridge was held exempt because it was a part

of the public highway. A wharf is a public highway used for precisely the same purposes that the bridge is used, for the public to travel over—in the one case to cross a river, and in the other to go down to the river.

We conclude, in consonance with the opinions in the cases herein cited, that the wharf property of the city of Louisville is public property used for public purposes, and therefore exempt from taxation under section 170 of the Constitution. It follows that the judgment of the chancellor, exempting the property, must be affirmed; and it is so ordered.

O'REAR, NUNN and CARROLL, JJ., dissenting.